UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DANIEL HARRINGTON and PAMELA HARRINGTON, Husband and Wife,

Plaintiffs,

v.

DAVID TACKETT, an individual, and DOES 1-10, inclusive,

Defendants.

Case No. 3:18-cv-00028-MMD-WGC

**ORDER**

Re: ECF No. 8

Before the court is defendant David Tackett's Motion to Set Aside Entry of Default. (ECF Nos. 8, 8-1 to 8-3.) Plaintiffs Daniel Harrington and Pamela Harrington filed a response. (ECF Nos. 13, 13-1 to 13-7.) Tackett filed a reply. (ECF No. 15.)

**I. BACKGROUND**

The Harringtons, initially representing themselves, filed their complaint against Tackett for breach of contract on January 17, 2018, based on diversity jurisdiction. (ECF No. 1.) The complaint alleges that the parties met in Crescent Valley, Nevada, on August 25, 2017, to negotiate a contract for the purchase of turquoise ore, with ownership of the turquoise claimed by each party. The meeting culminated in the parties executing a handwritten agreement. According to the Harringtons, Tackett agreed to pay the them $300,000 for all of the turquoise in their possession, and then he would make payments of ten percent of total ore sales at a rate of $20 per pound, as sales occurred. They allege that Tackett immediately transferred possession of the turquoise to three semi-tractors. A payment of $20,000 was made the following day. The Harringtons claim Tackett failed to pay the remaining amount due. They estimate the current market value of the turquoise to be $1,300,000. The Harringtons request $1,300,000, or alternatively, that Tackett return the full amount of turquoise removed from their possession.

The summons and complaint were served on Tackett on January 19, 2018. (ECF No. 4.)

Under Federal Rule of Civil Procedure 12, Tackett had twenty-one days, or until February 9, 2018, to file and serve an answer. Fed. R. Civ. P. 12(a)(1)(A)(i).

On March 2, 2018, the Harringtons filed an application for entry of default against Tackett. (ECF No. 5.) The Clerk entered default on March 2, 2018. (ECF No. 6.) The Harringtons filed a certificate of service on March 14, 2018, indicating that the filing was personally served on Tackett, on March 2, 2018. (ECF No. 7.)

On March 23, 2018, Tackett filed his motion to set aside the entry of default through counsel, Nathan J. Aman, Esq., and Jeremy B. Clark, Esq., of the Reno law firm Fahrendorf, Viloria, Oliphant & Oster L.L.P. (ECF No. 8.) Kenneth K. Ching entered a notice of appearance on behalf of the Harringtons on April 3, 2018 (ECF No. 12), and filed their response to the motion the following day (ECF No. 13). Tackett filed his reply brief on April 13, 2018. (ECF No. 15.)

The court held a hearing on the motion on April 24, 2018, where argument was heard from counsel. The court took the matter under submission, and issues the instant Order.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defendant, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). This was done here.

"The court may set aside an entry of default for good cause…." Fed. R. Civ. P. 55(c). "To determine 'good cause,' a court must 'consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citation omitted, alteration original) (*Mesle*). "A finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id*. (citation omitted). That said, the "rules for determining when a default should be set aside are solicitous towards movants, especially those whose actions leading to the default were taken without the

benefit of legal representation." *Id*. at 1089 (citations omitted).

"[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id*. (citations omitted).

### **III. DISCUSSION**

Tackett does not dispute that he failed to timely respond to the complaint, but contends that good cause exists to set aside the Clerk's entry of default because: his failure to respond was not the result of culpable or intentional conduct; he has meritorious defenses to the complaint; and, the Harringtons will not be prejudiced by the setting aside of the default. The court will address each of these factors, in turn.

**A. Culpable Conduct**

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (citations omitted, emphasis original). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfering with judicial decisionmaking, or otherwise manipulate the legal process.'" *Id*. (citation omitted). Courts have "'typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'" *Id*. (citation omitted). "[S]imple carelessness" is typically not sufficient. *Id*. (citations omitted). If the party failing to respond is a legally sophisticated party, "an understanding of the consequences of [the party's] actions *may* be assumed, and with it, intentionality." *Id.* (citation omitted, emphasis added). Behavior found to be culpable "usually involves conduct by parties that is calculated to help them retain property in their possession, and avoid liability by staying out of court[.]" *Id*. at 1094.

Tackett asserts that his delay in responding to the complaint was due to his unsuccessful attempts to secure counsel to represent him in federal court in Nevada. He states that he initially approached an attorney in Arizona (where Tackett resides), Kathryn G. Mahady, Esq., who

informed Tackett she was not licensed to practice in Nevada after a short delay. She referred him to counsel in Winnemucca, Nevada, Rendal Miller, Esq., who advised Tackett he was not then taking cases in federal court. Miller referred him to Damon Booth, Esq., who declined to represent him, and referred him to the firm of his current counsel. This motion followed.

The Harringtons disagree. They contend that while Tackett was supposedly seeking counsel, he was filing a complaint in a separate case similar to this action, and as such was legally sophisticated enough to file an answer in this case. The Harringtons further contend that his statement that his Winnemucca attorney could not practice in federal court is false, because that attorney has practiced in this court. The Harringtons also reference text messages between the parties where Tackett referenced talking to lawyers, as well as another text message where he indicated he knew the time he had to respond to a civil complaint.

*Mesle* instructs that a knowing failure to timely respond to a complaint is insufficient. There must be bad faith: an intention to take advantage of the opposing party, or to interfere with or manipulate the judicial process.

Here, while all involved seem to agree that Tackett should have been more diligent in securing counsel to respond to the complaint, the court finds there is no evidence of bad faith.

The Harringtons are correct that No. 8 Mine, LLC, an entity associated with Tackett, filed a complaint in the Sixth Judicial District Court of the State of Nevada in Humboldt County on February 2, 2018. (ECF No. 13-4.) No. 8 Mine, LLC was represented by Rendal B. Miller, Esq., when the complaint was filed. That action involves allegations concerning an agreement to purchase turquoise as well. The defendants in that action removed it to federal court on March 6, 2018. (Case No. 3:17-cv-104-MMD-WGC.) The defendants filed an answer and counterclaims against No. 8 Mine, LLC, and David Tackett, alleging that Tackett is the sole member of No. 8 Mine, LLC.  A notice of association of counsel was filed in that case by Nathan Aman, Esq., and Jeremy Clarke, Esq., on March 28, 2018. (ECF No. 15.) A notice of disassociation of counsel was filed by Mr. Miller on April 24, 2018. (ECF No. 23.)

While the court questions why Tackett did not go to Mr. Miller initially when he was served with the complaint, since Mr. Miller was representing an associated entity in another

action in state court, the facts before the court are that Tackett approached his attorney in Arizona first, who then contacted Miller. The court accepts Mr. Miller's representation that after the departure of the only other attorney in his office and a senior paralegal, he decided to stop taking cases in federal court, and referred Tackett to other attorneys. While Tackett may have taken a circuitous route to obtain counsel, there is still no evidence of bad faith.

The court also disagrees that the record establishes Tackett is a legally sophisticated party. There are fleeting references to conversations attorneys in text messages between the parties, and Tackett was apparently involved in at least one other action involving a dispute over turquoise ore. There is the text message between Tackett and Mr. Harrington where Tackett did state that he had had three weeks left to respond to another lawsuit. (ECF No. 13-6 at 3.) It is not clear whether in that case, Tackett had counsel, whether any extension of time was granted to file a response, or any of the other circumstances that would lead the court to conclude Tackett was acting in bad faith in this case.

The court does not find that this is enough evidence to conclude Tackett is legally sophisticated. Tackett is not a lawyer, and while he may have been involved in other legal proceedings, it is not clear from the record that he personally understood the consequences of failing to timely respond to the complaint. Moreover, *Mesle* instructs that even if Tackett were considered a legally sophisticated party, the "actions *may* be assumed, and with it, intentionality." *Mesle*, 615 F.3d at 1093; *TCI Grp. Life Ins. Plan.*, 244 F.3d at 699 n. 6 ("We have not held, [ ] no do we hold here, that legal sophistication or lack thereof is determinative of whether the culpability standard is met.").

The Harringtons suspect that Tackett's failure to respond was done in an effort to gain some sort of tactical advantage, but the record before the court falls short of supporting their conjecture. Instead, the outcome he faced in failing to respond was a default judgment and the risk of losing the turquoise.

In sum, this factor weighs in favor of finding good cause to set aside the Clerk's entry of default.

///

**B. Meritorious Defense**

"'A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy.'" *Mesle*, 615 F.3d at 1094 (citation omitted). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense[.]" Id. "'[T]he question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default." *Id*. (citation omitted). That is the subject of later litigation. *Id*.

According to Tackett, the written agreement entered into on August 25, 2017, is silent regarding when payment is due. Tackett's interpretation of the agreement is that he was obligated to pay the balance of the $300,000 prior to selling any of the turquoise, and that the parties understood payments would be made over time when Tackett was able to pay. He argues there are other material terms missing from the agreement, and that the agreement is ambiguous, which allows the consideration of parol evidence. In addition, he contends the Harringtons have not fully performed under the agreement because they have not delivered all of the turquoise identified in the agreement. Tackett further asserts that there is a dispute as to whether the Harringtons own the turquoise they purported to sell to Tackett, or whether Tackett owned it when he purchased a substantial amount of turquoise from the Eljen Group.

The Harringtons argue that when a contract is silent as to the time for payment, it must be made upon delivery, and they delivered the turquoise to Tackett, yet Tackett has not paid. Contrary to Tackett's assertion, the Harringtons maintain that they owned the turquoise when they entered into the agreement.

The handwritten agreement signed by the parties and dated August 25, 2017, states the following:
> $300,000 for all turquoise in possession plus 10% sales of ore and sales @ $20 per pound until turquoise is exhausted.
> Also Harringtons will reveal any and all knowledge of Turquoise #8 to David Tackett.
> Unrelated deal for turquoise sand approximate 8 barrels worth 50/50 split of sale proceeds.
> Approximate 48 super sacks with 130,000 pounds of ore which includes sand/and

> variation of ore. Two additional sacks at different location plus ore needing to be collected from ground.
> -David Tackett will be providing documentation from the courts that he is rightful owner of rock + this agreement will provide amnesty to any claims against Harringtons.

(ECF No. 8-2 at 2.)

The court cannot decide facts when determining whether Tackett has alleged any meritorious defense. Instead, the court must accept those allegations as true. There is certainly an argument to be made that the agreement here is vague and ambiguous, incomplete and/or missing material terms, which may or may not result in the consideration of parol evidence to determine the parties' intent. The text messages provided by the Harringtons themselves raise a question about the parties' intent and whether the written "agreement" was just a starting point with the parties' contemplating further negotiations.

There is also an issue about the ownership of the turquoise. On the one hand, the Harringtons state that there is no question they owned the turquoise, but the agreement they entered into includes a provision that Tackett will provide court documentation he is the owner. Their own complaint also avers that each party claimed ownership of the turquoise. Tackett claims that his other action he is involved in may resolve that issue.

At this juncture, Tackett has satisfied his burden to allege meritorious defenses. As such, this factor weights in favor of a finding of good cause to set aside the Clerk's entry of default.

**C. Prejudice**

"'To be prejudicial, the setting aside of a judgment must result in greater harm that simply delaying resolution of the case.'" *Mesle,* 615 F.3d at 1095 (citation omitted). "'[T]he standard is whether [plaintiffs'] ability to pursue [their] claim will be hindered.'" *TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 701 (9th Cir. 2001), *overruled on other grounds,* (citing *Falk v. Allen*, 739 F.3d 461, 463 (9th Cir. 1984) (per curiam)). Merely being forced to litigate on the merits is not prejudicial. *Id.*

Tackett argues there will be no prejudice to the Harringtons if the Clerk's entry of default is set aside.

The Harringtons contend they will be prejudiced because if the default is set aside, only

Tackett knows the location and condition of the turquoise and could dispose of it, transfer it, or hide it. In other words, they argue that setting aside the default would increase the likelihood that the evidence (the turquoise) would be lost or spoliated.

In his reply, Tackett argues that ownership of the turquoise has been disputed. He states that none of the turquoise has been sold, and he has agreed not to sell, transfer or otherwise dispose of it while this litigation is pending, and will stipulate to an injunction to that effect.

Contemporaneously with the filing of this motion, Tackett agreed to be bound by an injunction concerning disposition of the turquoise during the pendency of this lawsuit. Counsel has made a representation in the motion that to date, Tackett has not sold any of the turquoise. (ECF No. 8 at 6:17-18.)

The only prejudice the Harringtons reference is the risk that Tackett will somehow sell, transfer, or otherwise dispose of the turquoise. This seems to be alleviated by the offer to enter into a stipulated injunction whereby Tackett agrees not to do so. In any event, Tackett was in possession of the turquoise whether or not he had timely filed an answer, and the Harringtons would have had to address this risk in any case.

This final factor also weighs in favor of a finding of good cause to set aside the Clerk's entry of default.

**D. Extreme Circumstances**

The court is mindful of the Ninth Circuit's instruction that judgment by default is appropriate only in extreme circumstances. The court does not find extreme circumstances are present here, and the policy of deciding cases on their merits prevails.

**E. The Harringtons' Request for Attorney's Fees**

In light of the court's conclusion, the Harringtons' request for attorney's fees incurred in opposing the motion is denied.

### IV. CONCLUSION

All of the factors in the good cause analysis favor Tackett. The court is not convinced his conduct was culpable, as that term has been interpreted by the Ninth Circuit; he alleged facts sufficient to set forth a meritorious defense, and the court may not determine the validity of those

defenses at this juncture; and, setting aside the default would not prejudice the Harringtons. Finally, the extreme circumstances that justify denying a motion to set aside a clerk's entry of default are not present here. Therefore, the policy of deciding cases on the merits applies, and Tackett's motion is **GRANTED**. The Clerk's entry of default is hereby **SET ASIDE**.

Tackett shall have **FOURTEEN DAYS** from the date of this Order to file an answer or otherwise respond to the complaint.

**IT IS SO ORDERED.**

DATED: April 27, 2018.

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE