UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DANIEL HARRINGTON,
PAMELLA HARRINGTON, and
NIGHTWATCH MARINE, LLC,

    Plaintiffs

v.

DAVID TACKETT,

    Defendant

Case No.: 3:18-cv-00028-CSD

**Order**

Re: ECF No. 189

On January 10, 2022, the court issued an order imposing a compensatory civil contempt sanction after finding defendant Tackett in civil contempt of this court's orders to return to Plaintiffs the approximately 130,000 pounds of turquoise ore that is the subject of this litigation. (ECF No. 187.) The court gave Plaintiffs 30 days to file a memorandum of their fees and expenses incurred in obtaining the contempt finding and the attendant proceedings that have not been previously awarded. (*Id*.)

Plaintiffs filed their memorandum of fees and expenses. (ECF Nos. 189, 189-1 to 189-4.) Tackett filed a response. (ECF No. 190.) Plaintiffs filed a reply. (ECF No. 192.)

After a thorough review, the court will award Plaintiffs $42,952.33 in fees and $202 in costs as a civil compensatory sanction against Tackett.

**I. DISCUSSION**

**A. Attorney's Fees and Costs as a Compensatory Civil Contempt Sanction**

The court determined that Plaintiffs are entitled to a civil compensatory fine payable to them, as opposed to a coercive civil fine that would be payable to the court. (*See* ECF No. 187 at

3-4.) Compensatory sanctions are intended to compensate the aggrieved party for the injuries that resulted from the noncompliance with the court's order. "Where compensation is intended, a fine is imposed, payable to the complainant." *United Mine Workers*, 330 U.S. at 304. "Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *Id*."

A court may award the aggrieved party the attorney's fees and costs incurred in obtaining the finding of contempt as a compensatory contempt sanction. *See Donovan v. Burlington N.*, 781 F.2d 680, 684 (9th Cir. 1986) (quoting *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985)) (recognizing "the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party[.]"); *General Signal Corp. v. Donallco, Inc.*, 787. F2d 1376, 1380 (9th Cir. 1986); *Daimler AG v. A-Z Wheels LLC*, No. 16-CV-875 JLS (MDD), 2022 WL 281580, at *5 (S.D. Cal. Jan. 31, 2022) ("Compensatory sanctions may also take the form of Plaintiff's attorneys' fees in obtaining the contempt finding.")

In cases where attorney's fees are awarded as a compensatory civil contempt sanction, courts have applied traditional methods for calculating the fee award, including reference to local rules and the "lodestar" analysis along with the *Kerr* factors. *See General Signal,* 787 F.2d at 1380-81 (noting that the district court should consider the *Kerr* factors in awarding attorney's fees in connection with the civil contempt finding); *RG Abrams Ins. v. Law Offices of C.R. Abrams*, No. 2:21-cv-00194-FLA (MAAx), 2021 WL 5213103, at *9-10 (C.D. Cal. Nov. 9, 2021) (utilizing lodestar approach to assess award of fees to be awarded as civil contempt sanction); *Black Lives Matter Seattle-King County v. City of Seattle,* 516 F.Supp.3d 1202, 1211-12 (W.D. Wash. Jan. 28, 2021) (using lodestar figure and *Kerr* factors to determine fees awarded in connection with contempt finding); *Northern Central Distrib., Inc. v. Bogenschutz,* No. 1:17-

cv-01351-AWI-EPG, 2018 WL 6528422, at *5 (E.D. Cal. Dec. 12, 2018) (using lodestar method to assess attorney's fees awarded as a civil contempt sanction).

**B. The Lodestar Analysis**

When a party establishes it is entitled to an award of attorney's fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A determination of whether a fee is reasonable is generally based upon the traditional lodestar calculation set forth in *Hensley*. First, the court must determine a reasonable fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id*. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citation omitted). The factors are also set forth in Local Rule 54-14. The court has discretion to adjust the amount awarded to address excessive and unnecessary effort, and as such may exclude hours that are excessive, redundant or otherwise unnecessary. *Id*.

**1. Reasonable Hourly Rate**

Reasonable hourly rates are determined by the "prevailing market rates in the relevant community." *Blum v. Stevenson*, 465 U.S. 886, 895 (1984); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The burden is on the moving party to demonstrate the requested rates are in line with those in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (internal quotation marks and citation omitted). Affidavits or declarations of the moving attorney and other attorneys regarding prevailing rates in the community are sufficient evidence. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citations

omitted). The court may also rely on its own familiarity with the rates in the community to assess those sought in the pending case. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

The determination is not made by "reference to the rates actually charged by the prevailing party." *Schwarz v. Sec. of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (citation omitted).

Four attorneys were involved in this case on behalf of Plaintiffs, and they request varying hourly rates based on their years of experience:

| Attorney | Hourly Rate | Experience |
|---|---|---|
| Brian Irvine | $475 | 21 years |
| Anjali Webster | $297.50 | 11 years |
| Justin Bustos | $363.33 | 18 years |
| John Desmond | $560 | 28 years |

Plaintiffs provide biographies from counsel's website and cite a recent case from within this district to justify the requested rates.

In 2011 and 2015, rates of $400 and $450 for lawyers with thirty-plus years of experience were approved in cases in the unofficial northern division of the District of Nevada. *See Doud v. Yellow Cab*, 3:13-cv-00664-WGC; *Van Asdale v. Int'l Game Tech.*, Case No. 3:04-cv-00703-RAM. In the *Doud* case (in 2015), the court also approved the hourly rate of $350 for an attorney who had been practicing for 20-plus years.

In 2018, the following rates were approved within this district: an hourly rate of $450 per hour for a lawyer with over 30-years of experience; a rate of $375 for an attorney with 19 years of experience; and a rate of $275 for an attorney with 9 years of experience. *Leverty & Assoc. v.*

*Exley,* No. 3:17-cv-00175-MMD-WGC, 2018 WL 6728415 (D. Nev. Nov. 5, 2018), report and recommendation adopted in 2019 WL 913096 (D. Nev. Feb. 22, 2019)

Subsequently, the hourly rate of $500 has been approved for attorneys with between 18-30 years of experience. *Newmark Group, Inc. v. Avison Young*, No. 2:15-cv-00531-RFB-EJY, 2022 WL 990640 (D. Nev. Apr. 1, 2022); *Leftenant v. Blackmon*, No. 2:18-cv-01948-EJY, 2022 WL 605344 (D. Nev. Feb. 28, 2022).Rates of $450-$500 per hour have been recently approved for attorneys with 13-21 years of experience. *Newmark Group, Inc. v. Avison Young*, No. 2:15-cv-00531-RFB-EJY, 2022 WL 990640 (D. Nev. Apr. 1, 2022); *Buck v. Lakeview Mediation Solutions,* No. 2:20-cv-00189-GMN-BNW, 2021 WL 5176472, at *6 (D. Nev. Oct. 19, 2021); *McGuire v. Allegro Acceptance Corp.,* No. 2:18-cv-01635-MMD-VCF, 2020 WL 3432533, at *4 (D. Nev. June 22, 2020).

Tackett does not challenge the hourly rates sought by Plaintiffs' counsel. Based on the awards previously allowed within this district and the court's familiarity with prevailing rates in this community, the court finds the requested rates are reasonable.[1]

**2. Parameters of the Fee Award**

The court's contempt sanction was limited to fees and costs incurred "in obtaining the finding of contempt and attendant proceedings that have not already been awarded[.]" (ECF No. 187 at 4:11-12.)

Tackett argues that Plaintiffs' fee request dates back to October of 2020, but Plaintiffs should only be able to seek fees and costs beginning with their motion for order to show cause

---

[1] The court acknowledges that Mr. Desmond's rate is on the higher end of what has been found to be reasonable within this district.

that was filed on January 13, 2021. In addition, Tackett argues that the award should not include fees associated with the misconduct of his former counsel, Mr. Posin.

The court granted partial summary judgment in Plaintiffs favor on September 24, 2020, which gave them their requested remedy of rescission of the agreement (*i.e.,* Tackett was to return the turquoise ore and Plaintiffs were to return his $20,000 down payment in exchange for the turquoise ore). (ECF No. 124.) On October 26, 2020, Plaintiffs filed a status report indicating Tackett had not complied with the court's order to return the turquoise ore. At that point, Plaintiffs had only communicated with Tackett's former counsel, Mr. Posin, about return of the turquoise ore, but Mr. Posin failed to respond. (ECF No. 130.) The court set a status conference for December 4, 2020. (ECF No. 135.) Defendants filed a supplemental status report, indicating there were further communications with Mr. Posin to attempt to schedule the pickup of the turquoise ore, but he had still failed to respond. (ECF No. 136.)

The court held the hearing on December 4, 2020. Mr. Posin appeared for Tackett, but Tackett did not personally appear at the hearing. The court ordered Mr. Posin to contact Tackett by December 7, 2020, to arrange for Plaintiffs to pick up the turquoise that week. (ECF No. 137.)

Plaintiffs filed a status report on December 8, 2020, indicating that Mr. Posin did not respond to their efforts to arrange to pick up of the turquoise. In that status report, Plaintiffs argued that Tackett was in contempt of the court's order granting partial summary judgment and requiring the return of the turquoise. (ECF No. 138.) The court set another status conference for December 11, 2020, and the court ordered Tackett to attend. (ECF No. 142.)

On December 10, 2020, Plaintiffs filed another status report. Mr. Posin provided the address where the turquoise ore was located, but he did not provide a date and time for the turquoise ore to be picked up. Plaintiffs' counsel emailed Mr. Posin to advise that Mr. Harrington

would arrive at the address provided on December 10, 2020, to inspect the ore, and assuming it was in place, to arrange for its transport. Mr. Harrington arrived in Arizona to inspect the ore, but Tackett would not grant him access because he did not have an appointment. Plaintiffs' counsel attempted to contact Mr. Posin without success. (ECF No. 143.)

Tackett and Mr. Posin appeared for the December 11, 2020 hearing, at which point the court ordered Tackett to show cause by December 14, 2020, why he should not be held in contempt for failing to return the turquoise ore as ordered. (ECF No. 144.)

Mr. Posin later admitted he was not conveying all of the court's orders or these communications to his client. Therefore, it was not clear whether Tackett had notice of the court's orders up to that point. Tackett was unequivocally on notice that he may be held in contempt for failing to return the turquoise ore as of the December 11, 2020 hearing (and before Plaintiffs filed their motion for an order to show cause on January 13, 2021). As such, the court will not allow Plaintiffs to recover fees incurred prior to the December 11, 2020 hearing, but the court will allow them to recover fees from that point forward.

**3. Reasonableness of the Time Spent**

Initially, Plaintiffs requested $81,700.33 in attorneys' fees. In their reply brief, however, Plaintiffs acknowledge that certain fees set forth in their memorandum are not related to the contempt issue (*See* ECF No. 192-1 at 3), and these fees will be deducted from the amount requested by Plaintiffs:

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 1/19/21 | ADW | Review and analyze Tackett's opposition to motion for attorneys' fees | 0.2 |
| 1/21/21 | BRI | Continue preparing reply in support of motion for attorneys' fees; review order taxing cost | 2.6 |
| 1/22/21 | ADW | Review docket entry taxing costs | 0.1 |

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 1/25/21 | BRI | Continue legal research and drafting reply in support of motion for attorneys' fees | 3.2 |
| 1/26/21 | ADW | Review filed reply in support of motion for attorneys' fees | 0.2 |
| 1/26/21 | ADW | Discuss reply in support of motion for attorneys' fees with B. Irvine | 0.3 |
| 1/26/21 | BRI | Direct staff re: service of motion for attorneys' fees on Posin; draft and file certificate of service; complete drafting and file reply in support of motion for attorney's fees | 4.1 |
| 2/16/21 | ADW | Review Tackett's motion for late filing of notice of appeal | 0.2 |
| 7/29/21 | BRI | Exchange emails with client re: status; review order from Judge Cobb allowing Eljen Parties to take $20,000 Harrington payment if ore is returned | 0.5 |

The court finds other fees Plaintiffs have requested are not reasonable for various reasons, including that: the billing entries to not demonstrate a direct relationship to the contempt proceedings; they were incurred before Tackett definitively had notice of the contempt issue; the billing entries bill for multiple events and include events not related to the contempt issue. As such, the following fees will not be allowed:

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 10/23/20 | BRI | Phone conference with clients re: status; draft email to opposing counsel re: exchange of money for ore | 0.9 |
| 10/26/20 | BRI | Phone conference with client re: inspection and status report; draft and file status report | 1.1 |
| 10/28/20 | BRI | Review minute order setting status conference; draft email to client re: same | 0.3 |
| 11/5/20 | BRI | Phone conference with counsel for the Sugars re: Florida case; conference with clients re: same | 0.8 |
| 11/6/20 | BRI | Email opposing counsel re: ore; phone conference re: same | 0.3 |
| 11/13/20 | BRI | Exchange emails with opposing counsel re: ore pickup | 0.2 |
| 11/19/20 | BRI | Draft email to opposing counsel re: ore pickup | 0.2 |
| 12/1/20 | BRI | Direct staff re: emails to chambers for hearing | 0.2 |

| Date | Atty | Description | Hours |
|---|---|---|---|
| 12/3/20 | BRI | Participate in conference call with counsel for Eljen Parties re: judgment collection; phone conference with client re: status and strategy; draft supplemental status report and supporting declaration | 4.2 |
| 12/4/20 | BRI | Prepare for and conduct status hearing; conference with client re: same; review hearing minutes; phone conference with opposing counsel re: ore pickup; draft email re: same | 3.1 |
| 12/7/20 | BRI | Multiple phone conference with opposing counsel re: ore pickup; draft email re: same; conference with client re: status; review client email with pick up quote; continue preparing additional status report | 2.1 |
| 12/8/20 | BRI | Exchange emails with client regarding or inspection; continue drafting status report regarding turquoise exchange; Review and analyze court order regarding sanctions; Review and analyze judgment entered in favor of Harringtons; Exchange emails with opposing counsel regarding inspection | 4.8 |
| 12/9/20 | BRI | Review email communication with Court regarding status conference; Exchange emails with client regarding inspection | 0.4 |
| 12/10/20 | JPD | Review and analyze supplemental status report | 0.3 |
| 12/10/20 | BRI | Phone conference with client regarding inspection; emails with client regarding the same; emails and phone conferences with opposing counsel regarding the same; Draft and file status report regarding inspection | 3.9 |
| 12/11/20 | BRI | Prepare for and attend status hearing regarding inspection of turquoise; conference with client regarding same; Direct staff regarding filing of recording; exchange emails with client regarding inspection and status report; draft and file status report; Exchange emails with opposing counsel regarding inspection and pick up | 3.9 |
| 12/16/20 | BRI | Exchange emails with client regarding expenses for trip to conduct inspection; continue preparing an expense report and status report; Exchange emails with client regarding status report; finalize and file same[2] | 4.1 |

---

[2] The court made a separate order allowing Mr. Harrington to recover the expenses for this trip which occurred prior to the December 11, 2020 hearing.

| 12/16/20 | BRI | Exchange emails with Court regarding Tackett address; Review order directing US Marshals to serve pleadings on Tackett[3] | 0.4 |
|---|---|---|---|
| 12/17/20 | BRI | Exchange additional emails with counsel for Paul Sugar regarding depositions | 0.4 |
| 12/21/20 | BRI | Exchange emails with clients regarding depositions and subpoenas. Review order requiring reimbursement of travel expenses by Tackett. | 2.2 |
| 1/13/21 | ADW | Confer with staff re: motion for attorneys' fees and bill of costs. Review motion for order to show cause. | 1.4 |
| 1/18/21 | BRI | Review emails re: video exhibits; direct staff re: same; review and analyze opposition to motion for attorneys' fees; conference with staff re: same | 1.1 |
| 1/19/21 | BRI | Continue drafting reply in support of motion [4] | 3.6 |
| 01/26/21 | ADW | Review certificate of service | 0.1 |
| 01/27/21 | BRI | Continue drafting reply in support of motion[5] | 2.9 |
| 2/19/21 | BRI | Exchange emails with clients re: status | 0.2 |
| 3/4/21 | BRI | Exchange emails with client re: status | 0.2 |
| 3/10/21 | BRI | Exchange emails with client re: status | 0.2 |
| 3/30/21 | BRI | Exchange emails with client re: status | 0.2 |
| 6/16/21 | BRI | Exchange emails with client regarding status[6] | 0.2 |
| 7/27/21 | JPD | Review and analyze order on motion for sanctions[7] | 0.5 |

---

[3] This is not directly related to the contempt proceedings.

[4] This does not identify the motion to which it is referring, but two entries later stats continue preparing reply in support of motion for attorneys' fees.

[5] Again, this does not state to which motion it is referring, but it appears to be referring to the motion for attorneys' fees.

[6] There is no description regarding what these emails were about.

[7] There are two entries for this by JPD on July 27 and July 28, 2021; however, the court issued its order on July 28, 2021.

| 07/29/21 | BRI | Exchange emails with client re: status; review order from Judge Cobb allowing Eljen parties to take $20,000 Harrington payment if ore is returned[8] | 0.5 |
| 08/11/21 | BRI | Exchange emails with client regarding case status | 0.2 |
| 9/1/21 | BRI | Exchange emails with client re: case status | 0.2 |

The court finds the remainder of the fees sought are related to the contempt proceedings and are reasonable in amount. The total amount of the allowed fees is $42,952.33, broken down as follows:

| Timekeeper | Allowable Hours | Rate | Amount |
|---|---|---|---|
| BRI | 82 | $475 | $38,950 |
| ADW | 6 | $297.50 | $1,785 |
| JPD | 3.7 | $560 | $2,072 |
| JQB | .4 | $363.33 | $145.33 |
| TOTAL: | | | $42,952.33 |

**4. *Kerr*/LR 54-14 Factors**

*Kerr* and Local Rule 54-14 require the court to assess the amount of fees in connection with the following factors: the results obtained and amount involved; the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; the time limitations imposed by the client or circumstances; the experience, reputation and ability of the attorneys; the

---

[8] This was an order entered in another case.

11

undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

Here, not all of the factors are relevant given the procedural posture of this case, and many of them are subsumed in the lodestar calculation. Plaintiffs' counsel achieved an excellent result for their client. This case required significant time and labor. While the substantive legal question may not have been particularly difficult, this case presented various procedural hurdles that were quite unique and made more difficult by a recalcitrant and uncooperative defendant. These procedural difficulties undoubtedly required more time than counsel likely anticipated. The attorneys involved have significant experience and abilities and maintain a good reputation within the bar in Northern Nevada.

In sum, the court finds no basis within the *Kerr* factors/Local Rule 54-14 to adjust the amount of fees.

**C. Costs**

Initially, Plaintiffs requested $12,655 in costs. In their reply, they indicate that the proper amount is $6,532.50. Their exhibit itemizes the following costs:

| Date | Item | Amount |
| --- | --- | --- |
| 10/7/20 | Pacer | $8.50 |
| 12/18/20 | Pacer | $202 |
| 1/6/21 | Pacer | $1.90 |
| 1/6/21 | Pacer | $12.90 |
|  | Computerized Research | $6,246.00 |
| **TOTAL** |  | **$6,532.50** |

The October 7, 2020, charge is from prior to the time Tackett was officially on notice that he may be held in contempt, and it is not recoverable. The December 18, 2020 Pacer charge for $202 is reflected in Plaintiffs' billing documentation as "litigation services and technologies, transcript of audio telephone call." This is a telephone call with Tackett that Mr. Harrington recorded, and the court requested that a transcript be submitted. Therefore, the court will allow this cost to be recovered. There is no explanation of how the January 6, 2021, Pacer fees relate to the contempt proceeding; therefore, these costs will not be allowed. Finally, there is no documentation or explanation to demonstrate the $6,246 for computerized research was specifically related to the contempt proceedings. Therefore, this cost will not be allowed.

In sum, Plaintiffs are entitled to recover **$202** in costs.

**D. Miscellaneous Issues**

In his response, Tackett asks for reconsideration of the court's order finding him in civil contempt. Tackett's request is denied. Tackett's request is based on his insistence that the material he offered to return to Plaintiffs is the approximately 130,000 pounds in turquoise ore that is the subject of this litigation. However, the court has already made a finding this is not the case, and Tackett has not presented any new evidence that persuades the court otherwise.

Tackett also argues he is not yet obligated to pay Plaintiffs the expenses Mr. Harrington incurred in traveling to Arizona to try and inspect the ore on December 10, 2020. Tackett contends this is because the court ordered Plaintiffs could deduct these expenses from the $20,000, they are to pay Tackett as part of the rescission remedy *in the event he returns the turquoise ore* as ordered by the court. Tackett represents he is still holding the turquoise ore and he has not received the $20,000; therefore, he should not be required to pay the expenses.

Tackett, however, misses the point. The court has found the turquoise on Tackett's property is *not* the turquoise Plaintiffs sold to Tackett. Since Tackett has not returned the turquoise that was sold to Plaintiffs, they are under no obligation to return the $20,000. Therefore, Tackett is required by court order to reimburse Mr. Harrington the $1,911.72 in expenses incurred in traveling to Arizona on December 10, 2020.

## II. CONCLUSION

As a civil compensatory sanction, Tackett is ordered to pay Plaintiffs $42,952.33 in attorneys' fees and $202 in costs.

Tackett's request for reconsideration of the court's order finding him in civil contempt is denied.

Tackett remains obligated to pay Plaintiffs $1,911.72 for Mr. Harrington's expenses incurred in traveling to Arizona on December 10, 2020.

**IT IS SO ORDERED**.

Dated: May 27, 2022

_____
Craig S. Denney
United States Magistrate Judge